**McMANIMON, SCOTLAND**
**& BAUMANN, LLC**
427 Riverview Plaza
Trenton, NJ 08611
(973) 622-1800
Andrea Dobin (adobin@msbnj.com)
Michele M. Dudas (mdudas@msbnj.com)
*Attorneys for Plaintiff Andrea Dobin,*
*Chapter 7 Trustee*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ANTHONY OTTILIO,<br><br>                    Debtor. | Case No. 17-15942 (MBK)<br><br>Chapter 7<br><br>Honorable Michael B. Kaplan,<br>United States Bankruptcy Judge |
| ANDREA DOBIN, Chapter 7 Trustee,<br><br>                    Plaintiff,<br><br>vs.<br><br>VALLEY NATIONAL BANCORP, VALLEY NATIONAL BANK, AND SAR I, INC.,<br><br>                    Defendants. | Adv. Pro. No. 19-____ (MBK)<br><br>**VERIFIED COMPLAINT TO OBJECT TO PROOF OF CLAIM PURSUANT TO 11 U.S.C. § 502, TO RECOVER PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. §§ 541 AND 542, AND FOR RELATED RELIEF** |

Plaintiff Andrea Dobin, Chapter 7 Trustee ("Plaintiff" or "Trustee"), by way of Complaint against Defendants Valley National Bancorp ("Bancorp"), Valley National Bank ("Bank") and SAR I, Inc. ("SAR") (where appropriate, Bank and SAR will be collectively referred to as "Defendants"), hereby states and alleges as follows:

## JURISDICTION AND VENUE

1. This is a core proceeding brought pursuant to Fed. R. Bankr. P. 7001, 11 U.S.C. §§ 105, 502, 541 and 542, and 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (H) and/or (K).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

3. The venue of this proceeding is in the District Court of New Jersey pursuant to 28 U.S.C. §1409(a).

## THE PARTIES AND RELEVANT FACTS

### A. The Debtor and Real Estate

4. The Debtor is the son of Carmen Ottilio ("Carmen"), who owned V. Ottilio & Sons ("Sons").

5. Upon information and belief, Sons owned three (3) adjacent lots in Totowa, New Jersey, and built an office building on said property.

6. At various times after Carmen's passing in or about 1981, the Debtor purchased the Totowa properties owned by Sons, and operated them under Ottilio Properties, LLC ("LLC"). The properties included:

   a. 101 Forest Avenue, Totowa, New Jersey, a seven (7) acre lot ("Forest Property");
   b. One Ottilio Drive, Totowa, New Jersey, a 8,000 square foot commercial property ("Ottilio Drive Property"); and
   c. 30,000 square foot commercial property known as 555 Preakness Avenue, Totowa, New Jersey ("Preakness Property").

(where appropriate, the Forest Property, Ottilio Drive Property and Preakness Property will be collectively referred to as the "Totowa Properties").

7. The Debtor was the sole member of the LLC.

8. The Debtor also acquired a 15,000 square foot commercial property located at 217 Morris Avenue, Spring Lake, New Jersey ("Spring Lake Property"), which the Debtor rented and received rental income for (where appropriate, the Totowa Properties and the Spring Lake Property will be collectively referred to as the "Properties"). In July 2002, the Debtor transferred title for the Spring Lake Property to the LLC.

### B. Valley National Entities

9. Upon information and belief, Bancorp is a regional bank with its principal place of business at 1455 Valley Road, Wayne, New Jersey 07470.

10. Upon information and belief, the Bank is a subsidiary of Bancorp. The Bank's principal place of business is 1455 Valley Road, Wayne, New Jersey 07470.

11. Upon information and belief, SAR is an affiliate of Bancorp and/or the Bank, and has an address of 1455 Valley Road, Wayne, New Jersey 07470, the same address as Bancorp and the Bank.

12. In July 2002, September 2003, November 2005, March 2007 and September 2008, the Bank entered into mortgage transactions with the LLC, which pledged the Properties as collateral. Upon information and belief, the LLC and the Bank modified terms of the loans in July 2008 and March 2009.

13. Representatives and agents of the Bank led the Debtor to believe that each of the mortgages were stand-alone mortgages, *i.e.*, not cross-collateralized or cross-defaulted.

14. The various loans between the LLC and the Bank were not cross-collateralized when the July 2002 loan was entered into.

15. In September 2003, the Bank made a $1,800,000 loan to the LLC. The documentation for this loan contained a cross-collateralization provision.

3

16. During the 2007 refinance of the September 2003 loan to the LLC, the Debtor asserts that he was informed that the cross-collateralization provision was removed from the loan documents.

17. The Debtor alleged that, unbeknownst to him, the 2007 refinance did have the loans cross-collateralized, and the Debtor asserts that the loans were in fact improperly retroactively cross-collateralized.

18. Consistent with normal lending requirements, the Bank was named as an additional insured on the LLC's insurance policies.

19. The Spring Lake Property generated $250,000 in gross annual profits in rental income until 2005.

20. In May of 2005, an elderly man crashed his vehicle in to the Spring Lake Property, and caused substantial damage, which rendered the building as uninhabitable. As a result, rental income ceased.

21. The Bank agreed to fund reconstruction of the Spring Lake Property, but wrongfully, unilaterally and improperly withheld the insurance proceeds causing unnecessary delay in the reconstruction and imposed financial hardship on the Debtor.

22. Due to the delays, the reconstruction took over five (5) years to complete, and impacted and restricted the LLC's cash flow.

23. This conduct, as a result of the improper control of the insurance proceeds by the Defendants, it caused the Debtor to default on the Bank's loans for the Totowa Properties.

24. As of 2011, the Properties had a collective value in excess of $10,000,000. Upon information and belief, the Preakness Property commercial building had a value of $2,700,000 alone.

C. **Valley National Litigation**

25.As soon as the Spring Lake Property was finally rehabilitated in 2010, through the insurance proceeds and through funds borrowed by the Debtor personally against his personal residence and through other personal loans, the Bank instituted suit to collect on the respective notes and foreclose on its respective mortgages.

26.Specifically, in or about March 2010, the Bank sued the LLC and Debtor for the default on the notes for the Properties in the Superior Court of New Jersey, Passaic County Law Division at Docket No. PAS-L-132-10 ("Law Division Action").

27.In 2010, the Bank sued the LLC and Debtor to foreclose on the mortgages for the Properties in the Superior Court of New Jersey, Passaic County Chancery Division at Docket No. F-14404-10 ("Chancery Division Action") (where appropriate, the Law Division Action and the Chancery Division Action are collectively referred to as the Lawsuits").

28.On July 9, 2010, Bank obtained judgment against LLC and the Debtor in the Law Division Action in amount of $4,411,923.

29.Additionally, on April 19, 2011, Bank obtained a judgment against the LLC and the Debtor in the Chancery Division Action in the amount of $4,494,715.85, as amended to $4,944,372.50 on August 18, 2011.

30.A sheriff sale for the Spring Lake Property was conducted by the Monmouth County Sheriff, and it was sold to PH Spring Lake, LLC ("PH") for $2,370,000. The Deed transferring title from Shaun Golden, the Ocean County Sheriff, was recorded July 17, 2012.

31.Upon information and belief, PH is owned by obtained Hans Krestchman ("Kretschman").

32. Upon further information and belief, Bank provided the financing for the acquisition of the Spring Lake Property by PH and/or Krestchman to enable these parties to acquire the Spring Lake Property at the sheriff sale conducted for the benefit of the Bank.

33. Foreclosure sales for the Totowa Properties were scheduled in May 2012.

34. The Bank improperly set the upset price at $5,400,000, rather than the actual judgment amount of $4,900,000.

35. The inflated upset price for the Totowa Properties chilled bidding enabling the Bank to obtain title to the Totowa Properties through its affiliate, SAR.

36. Specifically, on or about May 7, 2012, SAR acquired the Ottilio Drive Property for $100. The Deed transferring title from Richard Berdnik, the Passaic County Sheriff ("Passaic County Sheriff") to SAR was recorded on July 16, 2012.

37. On or about May 7, 2012, SAR acquired the Preakness Property for $100. The Deed transferring title from the Passaic County Sheriff to SAR was recorded on or about July 6, 2012.

38. On or about May 7, 2012, SAR acquired the Forest Property for $100. The Deed transferring title from the Passaic County Sheriff to SAR was recorded on or about July 16, 2012.

39. Without marketing the Preakness Property, it was subsequently sold on or about May 30, 2014, by SAR to Fortress Holdings, LLC ("Fortress Holdings"), for $1,100,000, which, upon information and belief, was well-under market value.

40. In April 2014, the Debtor commenced suit against the Defendants and others in the Superior Court of New Jersey, Law Division, Monmouth County at Docket No. MON-L-1403-14, alleging, inter alia, RICO violations, civil conspiracy, consumer law fraud, constructive

6

fraud, tortious interference with business prospects, tortious interference with existing relationships, slander of title, unjust enrichment, and related relief. The Debtor's Complaint was dismissed by Order entered January 6, 2019 ("Dismissal Order"). By Opinion issued by the Appellate Division on April 3, 2019, the Dismissal Order was affirmed in part, reversed in part, and remanded back to the Superior Court[1].

41. Upon information and belief, on or about October 25, 2017, SAR sold the Ottilio Terrace Property and Forest Property to Green Tree Development Group, LLC for $900,000.

42. As a result of the manner in which the Bank has managed the liquidation of the LLC's real estate portfolio, the Debtor has suffered damage.

**D. Bankruptcy and Related Information**

43. On March 27, 2017 ("Filing Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, i.e., Title 11 of the United States Code, in the United States Bankruptcy Court for the District of New Jersey.

44. On May 15, 2017, this Court directed the appointment of a Chapter 11 Trustee (Docket No. 18).

45. By Order entered May 17, 2017, the Court appointed Plaintiff as Chapter 11 Trustee (Docket No. 21).

46. On July 28, 2017, Defendant filed a secured Proof of Claim in the amount of $923,088.33 (see Claim No. 7) based upon an Order granting summary judgment entered in the Law Division Action on July 9, 2010, in the amount of $4,411,923.16, plus counsel fees, costs

---

[1] On June 24, 2016, the Debtor commenced suit against Broege, Neumann, Fishcer & Shaver, LLC, et al. at Docket No. MON-L-2231-16, alleging malpractice for failing to properly defend the Law Division Action and the Chancery Division Action.

7

and related charges, and after alleged credits were provided ("Claim"). The Claim does not specify what property of the estate secures the debt.

47. Moreover, in addition to disputing the right of the Bank to assert any claim in this matter as a result of its egregious conduct from and after making the loan through the Litigation, the Bank further appears to have failed to properly credit the Debtor for monies paid for the Properties. For instance, Kretschman paid $2,370,000 for the Spring Lake Property, but there is only a credit of $2,275,364.88 applied (see page 7 of Claim). Additionally, Fortress Holdings paid $1,100,000 for the Preakness Property, but is only credited $828,391.87.

48. On February 23, 2018, Plaintiff filed a Motion to convert the Chapter 11 case to Chapter 7 (Docket No. 109), which was granted by Order entered April 2, 2018 (Docket No. 119).

49. On April 5, 2018, the Trustee was appointed by the Office of United States Trustee to serve as the Trustee in the Debtor's proceeding (Docket Nos. 120 and 121). The Trustee is duly qualified and currently serves as the Trustee.

## **COUNT ONE**
### **(11 U.S.C. § 502)**

50. The Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

51. Plaintiff disputes that the Bank is entitled to any claim against the Estate and, in fact, is liable for substantial damages to the Estate.

52. Pursuant to Section 502(d) of the Bankruptcy Code, Plaintiff is entitled to an order waiving, discharging and barring any claims that the Defendant may hold against the within Estate.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant the Bank as follows:

(a) for an order waiving, discharging and barring any claims which the Bank may hold against Debtor's estate; and

(b) for such other relief that this Court deems just, proper, and equitable.

## COUNT TWO
### (Disallowance of or Equitable Subordination of Claims)

53. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if full set forth herein at length.

54. The Bank engaged in inequitable conduct in connection with the Lawsuits, foreclosures and disposition of the Properties.

55. To the extent the Bank, or any of the Defendants, have asserted the Claim against Debtor's estate, they cannot establish entitlement to such claim. Thus, the Claim must be disallowed.

56. In the alternative, Defendants' inequitable conduct, as set forth above, has injured Debtor and all creditors. Thus, to the extent the Bank has asserted the Claim against Debtor's estate, it must be equitably subordinated pursuant to 11 U.S.C. §§ 510 and 105(a).

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendants, jointly and severally, as follows:

(a) any allowed claims of Defendants be disallowed or equitably subordinated to the claims of all other creditors;

(b) any alleged lien securing the subordinated Claim be transferred to the estate;

(c) costs and attorneys' fees be awarded; and

(d) such other and further relief as the Court deems just and proper be granted.

## COUNT THREE
### (for an Accounting and Proof Hearing)

57. Plaintiff repeats and realleges the allegations as if set forth at length herein.

58. Plaintiff is entitled to a full accounting on the fair market value of the properties foreclosed by Defendants, and all payments and profits derived therefrom.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendants, joint and severally, as follows:

(a) for an accounting;

(b) for a fair market valuation hearing; and

(c) such other and further relief as the Court deems just, appropriate, and equitable.

## COUNT FOUR
### (Turnover of Property of the Estate)

59. The Plaintiff repeats and realleges the allegations set forth above as set forth at length herein.

60. To the extent there was equity in the Properties based upon the Defendants' failure to provide a fair market value creditor or properly credit other amounts for the Properties, any surplus received by Defendants constitutes property of the Estate pursuant to 11 U.S.C. § 541.

61. The equity in the Properties which resulted in a surplus to the Defendants must be turned over to the Trustee pursuant to 11 U.S.C. § 542.

4841-5485-6078, v. 2

**WHEREFORE**, the Trustee demands judgment against Defendants, jointly and severally, as follows:

   a. awarding the Trustee judgment in the amount of the equity in the Properties, including any surplus;

   b. awarding attorneys' fees and costs; and

   c. granting such other and further relief as is just and appropriate.

**McMANIMON, SCOTLAND
& BAUMANN, LLC**
*Counsel to Plaintiff Andrea Dobin,
Chapter 7 Trustee*

Dated:  May 17, 2019        By: /s/ *Michele M. Dudas*
                                    MICHELE M. DUDAS

4841-5485-6078, v. 2

## **VERIFICATION**

**ANDREA DOBIN**, of full age, certifies as follows:

1.  I am the Chapter 7 Trustee appointed in the bankruptcy proceeding of Anthony Ottilio. I am fully familiar with the facts and allegations set forth herein.

2.  I have reviewed the Verified Complaint and state that the allegations contained therein are true to the best of my own personal knowledge. As to those allegations stated on information and belief, I believe same to be true.

I certify that the foregoing statements made by me are true. I further certify that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 17, 2019                              */s/ Andrea Dobin*
                                                                ANDREA DOBIN

4841-5485-6078, v. 2